UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTURY THEATERS, INC., | No. C-05-3146 JCS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART CENTURY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, DENYING TRAVELERS' MOTION FOR SUMMARY JUDGMENT (OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT) AND GRANTING IN PART AND DENYING IN PART CENTURY'S MOTION TO STRIKE** |
| v. | |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | |
| Defendant. | |
| _____/ | **[Docket Nos. 23, 28, 50]** |

## I.   INTRODUCTION

This case involves a dispute regarding the proper interpretation and application of an insurance policy issued by Defendant Travelers Property Casualty Company of America ("Travelers") to Plaintiff Century Theaters, Inc. ("Century"). On Friday, March 3, 2006, the following motions came on for hearing: 1) Century's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Century's Summary Judgment Motion"); 2) Travelers' Motion for Summary Judgment (or in the Alternative, Partial Summary Judgment) ("Travelers' Summary Judgment Motion"); and 3) Century's Request to Strike Portion of Travelers' Reply Memorandum in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment and Century's Request to File Sur-Reply Memorandum ("Motion to Strike"). For the reasons stated below, Century's Summary Judgment Motion is GRANTED in part and DENIED in part. Travelers' Summary Judgment Motion is DENIED. The Motion to Strike is GRANTED in part and DENIED in part.

**II.     BACKGROUND**

**A.     Facts**

On March 8, 2004, Century entered into a contract (the "Contract") with Barry Swenson Builders ("Contractor") for construction of a 13-auditorium complex in Monterey, California (the "Project"). Joint Statement of Material Facts in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Joint Statement"), No. 8 & Ex. B (Contract). Under the Contract, Century was required to obtain all-risk property insurance for the Project. Joint Statement, Ex. B (Contract), Section 11.4. Century purchased an all-risk policy from Travelers, issued as insurance policy number KTJ-CMB-123D734-5-04 (the "Policy"), effective October 1, 2004 to October 1, 2005. Joint Statement, No. 1 & Ex. A (Policy).

The Policy contains a Property Coverage Form that states as follows:

> A.     INSURING AGREEMENT
>
> The Company will pay for direct physical loss or damage to Covered Property at premises as described in the most recent Statement of Values or other documentation on file with the Company, caused by or resulting from a Covered Cause of Loss. Covered Cause of Loss means risks of direct physical loss unless the loss is excluded in Section D., Exclusions; limited in Section E., Limitations; or excluded or limited in the Supplemental Coverage Declarations or by endorsements.

Joint Statement, Ex. A (Policy), Property Coverage Form, ¶ A. The Property Coverage Form goes on to list certain exclusions, including the following:

> 3.     The Company will not pay for loss or damage caused by or resulting from any of the following:
>
>        . . .
>
>        b.     Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;
>
>        c.     Faulty, inadequate or defective:
>
>               (1)    Planning, zoning, development, surveying, siting;
>               (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>
>               . . .

of part or all of any property on or off an insured premises.

However, in the event an excluded cause of loss that is listed in 3.a. through 3.c. above results in a Covered Cause of Loss, the Company will be liable only for such resulting loss or damage.

*Id*., Property Coverage Form, MS C1 00 01 00, Section D.3 (hereinafter, the "Acts or Decisions Exclusion" (Section 3.b), the "Planning Exclusion" (Section 3.c.1), the "Faulty Workmanship Exclusion" (Section 3.c.2) and the "Resulting Loss Provision" (last sentence of Section 3)). In addition, the Policy contains an endorsement entitled "Fungus, Rot, Bacteria and other Cause of Loss Changes." This endorsement includes the following provision:

> B. The following is added to the LIMITATIONS contained in Section E. of the Property Coverage Form. This limitation applies to all Coverage Forms and endorsements in this policy that are subject to the limitations contained in the Property Coverage Form:
>
> > The Company will not pay for loss of or damage to, or any loss that is a consequence of loss or damage to the interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
> >
> > a. The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters . . .

*Id*., Fungus, Rot, Bacteria and other Cause of Loss Changes, MS C2 35 10 02, Section B (hereinafter, the "Hole in the Roof Provision"). Another endorsement in the Policy, entitled "Builder's Risk," extends coverage to "Builders Risk Property," which includes "buildings or structures in the course of construction." *Id*., Builder's Risk, MS C3 01 07 99. Finally, at the end of the Policy is a form entitled "General Conditions" which states that "[a]ll coverages included in this policy are subject to the following conditions." *Id*., General Conditions, MS C5 02 01 00. This form includes the following provision:

> G. CONTROL OF PROPERTY
>
> Any act or neglect of any person other than the Insured beyond the direction or control of the Insured will not affect this insurance.

3

*Id*., Section G (hereinafter, the "Control of Property Provision").

By mid-October 2004, the Contractor had completed the exterior walls of the structure and poured a lightweight concrete component of the roof, but the waterproofing system of the roof had not been completed and none of the roof penetrations left for pipes and conduits had been sealed. Joint Statement, No. 13.  Also by mid-October, a large portion of the interior dry-wall, insulation, and ceiling tiles had been installed.  Joint Statement, No. 14.  The Contractor did not install a temporary protective covering to prevent water intrusion, despite the incomplete waterproofing system and unsealed penetrations.  Joint Statement, No. 17.  Between October 16-19 and on October 25 and 26, 2004, heavy rains fell in Monterey, causing water to enter the interior of the building. Joint Statement, No. 15.  As a result, the Contractor had to remove and replace most of the drywall, ceiling tiles and insulation.  Joint Statement, Nos. 15, 16.  The roof and exterior walls were not damaged by the rain.  Joint Statement, No. 18.

On December 7, 2004, Century submitted a claim to Travelers for coverage under the Policy to pay for the losses that resulted from the events described above.  Declaration of Robert Michalosky in Support of Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment ("Michalosky Decl."), Ex. D.[1]  In a letter dated January 31, 2005 (the "January 31 letter"), Travelers denied coverage.  Declaration of Wendy L. Merrill in Support of Travelers' Motion for Summary Judgment (or, in the Alternative, Partial Summary Judgment) ("Merrill Decl."), Ex. A.  In the January 31 letter, Travelers cited the Faulty Workmanship Exclusion,  the Hole in the Roof Provision, the Acts or Decisions Exclusion, and the Planning Exclusion, in support of its denial. Travelers explained its denial as follows:

> The policy, including the Builder's Risk coverage, does not provide benefits for interior rain damage unless the roof or walls sustains [sic] damage by a covered peril. In this case there was no damage to the roof or walls. Therefore, there is no coverage for the interior water

---

[1] Travelers objected to the Michalosky Declaration on numerous grounds.  *See* Travelers' Objections to Declaration of Robert Michalosky.  The Court rules on these objections only to the extent that it relies on statements in the declaration or documents attached to it.  With respect to Travelers' objection that Michalosky does not have personal knowledge of the claim documents found in Exhibit D and therefore cannot authenticate those documents, the objection is overruled because Travelers stipulated at oral argument that, for the purposes of determining whether a claim was filed, these documents are authentic.

4

> damage. Additionally, to the extent the construction sequencing was improper, the policy does not provide benefits for loss caused by improper planning or construction. The resultant interior water damage caused by the improper construction is not a covered cause of loss. Therefore, no benefits are available for this claim.

Merrill Decl., Ex. A. Travelers reiterated its position in a second letter, dated February 9, 2005. Merrill Decl., Ex. B.

### B. Procedural Background

Century filed the complaint in this action on August 3, 2005, asserting claims for breach of contract, tortious bad faith, and declaratory relief. The parties now bring motions for summary judgment. Century asserts that it is entitled to summary judgment on all three claims because the Policy provides coverage for its losses and that coverage was unreasonably denied. Travelers also seeks summary judgment on Century's claims, arguing that, as a matter of law, the loss claimed by Century is *not* covered under the Policy. The parties' positions are set forth below.

In its Motion, Century asserts that none of the four provisions relied upon by Travelers – the Faulty Workmanship Exclusion, the Hole in the Roof Provision, the Acts or Decisions Exclusion, and the Planning Exclusion – justifies its denial of coverage. Century argues further that even if the claim fell within these exclusions, they would not apply because the exclusions themselves are limited by the Control of Property Provision, which provides coverage for acts of third parties that are "beyond the direction or control of the insured."

With respect to the exclusions cited by Travelers in support of denial, Century argues that: 1) the Faulty Workmanship Exclusion does not apply because a California court interpreted an all-risk policy containing an identical exclusion as covering flawed *processes* of construction, *see Allstate Ins. Co. v. Smith*, 929 F.2d 447, 449 (9th Cir. 1991); 2) the Hole in the Roof Provision does not apply because, under *Tento Int'l, Inc. v. State Farm Fire and Cas. Co.*, 22 F.3d 660 (9th Cir. 2000), the efficient proximate cause was the Contractor's failure to cover the roof, not the rain; 3) Travelers' reading of the Acts or Decisions Exclusion to apply to the facts here is so broad as to render coverage under the Policy illusory and therefore should be rejected; 4) Travelers' reliance on the Acts or Decisions Exclusion also should be rejected under the doctrine of collateral estoppel because the Ninth Circuit has already held that Travelers' reliance on the same provision in a

5

separate action was improper; *see Sentience Studio, LLC v. Travelers Ins. Co.*, 102 Fed. Appx. 77 (9th Cir. 2004); and 5) the Planning Exclusion does not apply because the language used in that provision is limited to city planning activities. Finally, Century argues that it is entitled to summary judgment on its breach of contract claim on the basis of the Control of Property Provision because "the evidence is uncontroverted that the acts in question, the sequencing of work, the decision to commence installation of interior finishes before the roof was watertight and the failure to install a temporary protective covering over the roof, were acts taken by the Contractor, not Century." Motion at 9. With respect to the bad faith claim, Century asserts that the Court should find bad faith because it is clear from the case law that the loss is covered.

In its Opposition, Travelers asserts that because it is undisputed that the roof and exterior of the building were not damaged, the Hole in the Roof Provision applies. According to Travelers, *Tento* – in which the court found that a similar hole in the roof provision did *not* apply – is distinguishable because it contained a resulting loss provision that was worded differently than the one in the policy here. Travelers further asserts that *Tento* supports the conclusion that the Faulty Workmanship Exclusion applies. Travelers argues that the Control of Property Provision also does not apply because: 1) it is a general provision which must give way to the more specific endorsements, including the Hole in the Roof Provision; 2) Century's collateral estoppel argument fails because *Sentience* involved an Acts or Decision Exclusion whereas this one does not; and 3) there is a fact question as to whether Century controlled the Contractor. Finally, Travelers asserts that there is no evidence in the record that Travelers acted in bad faith.

In its Reply, Century asserts that Travelers has failed to address *Allstate* and misapplied *Tento*. Century further notes that Travelers does not make any attempt in its Opposition to rebut Century's arguments concerning the applicability of the Acts or Decisions Exclusion or the Planning Exclusion.[2]

---

[2] At oral argument, Travelers conceded that it is not asserting either of these exclusions as a defense to Century's summary judgment motion. Accordingly, the Court need not address these exclusions.

1    In Travelers' Summary Judgment Motion, Travelers reiterates many of the positions taken in
2 its Opposition to Century's motion. In particular, Travelers asserts that the Hole in the Roof
3 Provision applies, that *Tento* is distinguishable, that the Workmanship Provision applies, and that the
4 Control of Property Provision does *not* restore coverage. With respect to the Control of Property
5 Provision, Travelers argues again that the specific endorsement containing the Hole in the Roof
6 Provision takes precedence over the more general Control of Property Provision contained in the
7 General Conditions form. Travelers argues further that even if applicable, the Control of Property
8 Provision does not help Century because it is clear that the Contractor was under Century's control.
9 Finally, Travelers asserts that because there is no coverage, as a matter of law, there also can be no
10 bad faith.

11   Century opposes Travelers' motion for the reasons set forth in its own summary judgment
12 motion.

13   In its Reply, Travelers makes the same arguments raised in its earlier briefs. In addition, it
14 argues for the first time that the Faulty Workmanship Exclusion applies under *Tzung v. State Farm*
15 *Fire and Cas. Co.*, 873 F.2d 1338 (9th Cir. 1989). Travelers goes on to assert that because both rain
16 and faulty workmanship are excluded, the efficient proximate cause doctrine is irrelevant. Finally,
17 Travelers argues that its conclusion that the loss was not covered was reasonable, citing to a
18 California case that is not certified for publication and a decision by the District of Oregon in which,
19 it asserts, the courts reached a similar conclusion.

20   In response to Travelers' Reply, Century filed a motion ("the Motion to Strike") requesting
21 that Section C of Travelers' Reply, which contains references to the unpublished decisions, be
22 stricken. Century also requests that it be permitted to file a sur-reply to address the new authority
23 cited in Travelers' Reply, including *Tzung*. In the proposed sur-reply, Century rejects Travelers'
24 assertion that under *Tzung*, the Faulty Workmanship Exclusion applies.

25 **II.   ANALYSIS**
26   **A.   The Motion to Strike**

27   Century requests that the Court strike Section C of Travelers' Reply Brief on its Summary
28 Judgment Motion or, in the alternative, allow Century to file a sur-reply brief. Under Fed. R. Civ. P.

7

12(f), the Court may strike from a complaint "any redundant, immaterial, impertinent, or scandalous matter."  "Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).  While the Court questions the propriety of Travelers' citation to a non-published California case, it cannot say that under the circumstances of this case, in which the reasonableness of its position is at issue, reference to such a case rises to the level of "scandalous" or "impertinent."  Therefore, the Court declines to strike Section C of Travelers' Reply Brief.

On the other hand, Century's request to file a sur-reply addressing the new authority in Travelers' Reply is GRANTED.

### B.   Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Further, "*Celotex* requires that for issues on which the movant would bear the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact," that is, "that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Fitzpatrick v. City of Atlanta*,  2 F.3d 1112, 1116  (11th Cir.1993).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial."  *Id.* at 323.  On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant.  *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 255 (1986).

8

### C. The Hole in the Roof Provision

Travelers relies heavily upon the Hole in the Roof Provision in support of its position that, as a matter of law, Century's loss is not covered under the Policy. According to Travelers, because it is undisputed that the roof and external structure were not damaged by the rain, the Hole in the Roof Provision bars coverage. Century, on the other hand, asserts that under *Tento*, the rain is not the efficient proximate cause of the loss and, therefore, this limitation does not apply. Century is correct.

In *Tento*, the plaintiff sought coverage under a policy issued by State Farm for losses that occurred when a third party contractor left uncovered an opening in the roof of the plaintiff's business premises and rain damaged the electronics equipment inside. 222 F.3d 660, 661 (9th Cir. 2000). The policy contained a hole in the roof provision very similar to the one here. It also contained exclusions similar to those contained in the Policy Coverage Form here. In particular, in a section entitled, "Losses Not Insured," the policy provided as follows:

> 3. We do not insure under any coverage for any loss consisting of one or more of the items below . . .
>    . . .
>    a. conduct, acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body whether intentional, wrongful, negligent or without fault;
>    b. faulty, inadequate, unsound or defective:
>       (1) planning, zoning, development, surveying, siting;
>       (2) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>       (3) materials used in repair, construction renovation or remodeling; or
>       (4) maintenance of part or all of any property.
>
> But if accidental direct physical loss results from items 3.a. and 3.b, we will pay for that resulting loss unless the resulting loss is itself one of the losses not insured in this section.

*Id*. at 662. The Court began its analysis by addressing which of two causes – rain or the contractor's negligence – was the efficient proximate cause of the loss. *Id*. Looking to California law, under which the efficient proximate cause is the "predominating" or "most important cause of the loss,"

1   the court concluded that the efficient proximate cause was the contractor's negligence rather than the
2   rain. *Id*.

3       In reaching the conclusion that the contractor's negligence was the efficient proximate cause
4   of the loss, the court relied, in part, on *Allstate Ins. Co. v. Smith*, 929 F.2d 447 (9th Cir. 1991).
5   There, the Ninth Circuit applied an older formulation of the efficient proximate cause doctrine, set
6   forth in *Sabella v. Wisler*, 59 Cal. 2d 21 (1963), to conclude that where a roofer's failure to cover a
7   hole in the roof resulted in rain damage, a hole in the roof limitation in the policy did not apply
8   because the efficient proximate cause of the loss was the roofer's failure to cover the premises. *Id*.
9   The Court in *Tento* also rejected the defendant's reliance on *Diep v. California Fair Plan Ass'n*, 15
10  Cal. App. 4th 1205 (1993) – a case on which Travelers also relies – on the basis that it did not
11  address the question of efficient proximate cause. *Id*. at 663, n. 3.

12      Having determined that the efficient proximate cause in *Tento* was the contractor's
13  negligence rather than the rain, the court went on to address whether losses resulting from third
14  party negligence were covered. *Id*. at 663. The Court concluded that it was, explaining that
15  although third party negligence appeared to be excluded under the Losses Not Insured section of the
16  policy, the resulting loss provision at the end of that section restored coverage because it covered
17  resulting losses unless excluded "under this section." *Id*. Because the exclusion for rain damage
18  was in a separate section, the court concluded the resulting loss was not excluded. *Id.* The Court
19  did not rely on or address the faulty workmanship limitation and there is no indication that the
20  insurance company relied on that exclusion.

21      Both *Tento* and *Allstate* are directly on point regarding efficient proximate cause. Here, as in
22  those cases, the efficient proximate cause of the loss was the fact that the roof was left uncovered
23  even while work on the interior proceeded. This was the most important cause of the loss, even if
24  the damage was also caused by the rain. As a result, the Court concludes, as a matter of law, that the

10

1 Hole in the Roof Provision does not provide a basis on which Travelers was entitled to deny
2 coverage.[3]

### D. The Faulty Workmanship Exclusion

Century asserts that under *Allstate*, the Faulty Workmanship Exclusion does not bar coverage of the loss in this case. Travelers takes the position that this exclusion does apply. In its briefs, Travelers advances three arguments in support of its position. First, it asserts that the Faulty Workmanship Exclusion applies because *Tento* is distinguishable. Second, Travelers argues that *Allstate* does not apply because Century has not asserted that the Faulty Workmanship Exclusion is ambiguous. Third, Travelers argues that under the *Tzung* line of cases, the Faulty Workmanship Provision applies. The Court concludes that the Faulty Workmanship Exclusion does not apply.

Travelers' first argument, based on *Tento*, is difficult to understand. In its Opposition to Century's summary judgment motion, a section entitled "The Exclusion for Faulty, Inadequate or Defective Construction Also Bars Coverage" contains a discussion of how the policy in *Tento* is distinguishable from the Policy here. In particular, Travelers notes that the resulting loss provision in *Tento* is different from the one here in that it provided coverage for all resulting loss except for that which was excluded *in that section*. Travelers seems to suggest that because the Resulting Loss Provision here incorporates exclusions from other sections – including the Hole in the Roof Provision – there is no coverage. The fallacy in this logic is that the Resulting Loss Provision is only relevant if the Court concludes that one of the exclusions in Section 3 of the Property Coverage Form applies. That is, in *Tento* the resulting loss provision restored coverage that otherwise would have been unavailable. Yet, Travelers has not established that any of the exclusions contained in Section 3 applies in the first instance. Nor has Travelers made clear how the fact that the resulting

---

[3] At oral argument, Travelers asserted that *Tento* does not apply because in that case it was undisputed that the contractor was negligent whereas here it is not clear whether the contractor was negligent. The Court disagrees. The holding of *Tento* regarding efficient proximate cause, on which the Court relies here, does not depend on the contractor's negligence. Indeed, in *Allstate*, on which the *Tento* court relies in support of its proximate causation analysis, the court holds only that the efficient proximate cause of the damage was the "contractor's failure to cover the premises" rather than the rain. 929 F.2d at 451. There is no mention in *Allstate* of negligence. Moreover, Travelers does not dispute that one cause of the harm in this case was the sequencing of construction. Therefore, *Tento* supports the conclusion that in this case, the Hole in the Roof Provision does not apply.

11

loss provision in *Tento* is distinguishable from the one here supports the conclusion that the Faulty Workmanship Exclusion applies.

Next, the parties dispute the significance of the *Allstate* decision. In *Allstate*, a portion of the roof of the plaintiff's business premises was removed by a contractor hired to bring the building into compliance with earthquake standards. 929 F.2d at 448-449. As in *Tento*, the contractor did not place a temporary covering over the hole and rain damaged the equipment inside. *Id*. The insurance company denied coverage under an all-risk policy that contained an exclusion identical to the exclusion in this case for "faulty, inadequate or defective . . . design, specifications, workmanship, repair, construction, renovation, remodeling, grading [or] compaction." *Id*. As discussed above, the court in *Allstate* concluded that the efficient proximate cause of the loss was the contractor's failure to cover the roof rather than the rain. It also determined that the losses were not a flawed finished product but rather, were caused by the contractor's sequencing of work and that this cause of loss was not excluded under the faulty workmanship exclusion. *Id*.

The Court in *Allstate* explained that the faulty workmanship exclusion was ambiguous because it could be interpreted as applying to either "(1) the flawed quality of a finished product, or (2) a flawed process." *Id*. Given that the roofer hadn't completed any portion of the new roof, and thus, there was no finished product, the exclusion only applied, the court reasoned, if it were interpreted as covering a flawed process. *Id*. Yet reading the policy as a whole, the court concluded that the better interpretation of the exclusion was that it applied only to flawed finished work. *Id*. Among other things, the court pointed to the resulting loss clause in the policy as an indication that its interpretation of the policy was correct. The Court explained:

> The flawed product interpretation . . . is bolstered by the provision in the "faulty workmanship" exclusion that "any ensuing loss not excluded or excepted in this policy is covered." It is easy to imagine a situation where a flawed product could cause ensuing losses. For example, a leaky roof could lead to water damage to Smith's property. Presumably, water damage would be an ensuing loss covered by the policy but repairing the roof would not be covered. On the other hand, it is difficult to imagine what covered "ensuing losses" could flow from a flawed process, because "any loss or damage caused" by the process would be excluded. In other words, if the broader "flawed process" interpretation is accepted as the only reasonable interpretation of the policy, the "ensuing loss" language is seemingly rendered meaningless.

12

*Id*. at 450.

Although the Faulty Workmanship provision in this case is identical to the one in *Allstate*, Travelers asserts that *Allstate* does not apply because Century has not asserted that the Faulty Workmanship Exclusion is ambiguous. Further, Travelers assert, just because the court in *Allstate* found the faulty workmanship provision to be ambiguous in the context of that particular policy, this Court is not bound to find the same as to the exclusion "as used in *this* policy, and under *these* circumstances." Reply at 7. Travelers' position has no merit. In invoking *Allstate* in support of its summary judgment motion, Century clearly took the position that the Faulty Workmanship Exclusion in this case, like the one in *Allstate* is ambiguous, and further, that it does not cover construction processes. Further, Travelers' assertion that the Court need not follow *Allstate* is unpersuasive in light of Travelers' failure to identify any meaningful differences between this case and *Allstate* with respect to either the facts or the policy language.

The Court also rejects Travelers reliance on *Tzung* in support of its position that the Faulty Workmanship Provision applies. In *Tzung*, the insureds sought coverage for cracks in a building they owned triggered by subsurface water that led to expansion of the soil under the building. 873 F.2d at 1339. The insurance company asserted that the loss was excluded under a faulty workmanship exclusion while the plaintiffs took the position that the loss was covered under a provision covering losses resulting from third party negligence because the losses wouldn't have occurred in the absence of faulty construction and the city's failure to properly inspect the soil. *Id*. The court held that the coverage for losses resulting from third party negligence did not extend to the losses in that case because they were specifically excluded under the faulty workmanship provision. *Id*. at 1340. In reaching this conclusion, the court rejected the plaintiffs' assertion that the faulty workmanship exclusion was ambiguous, finding that "an unstrained interpretation of the exclusion for 'faulty workmanship' includes losses caused by defects in the design and construction of the building." *Id*. (*citing Kroll Constr. Co. v. Great Am. Ins. Co.*, 594 F. Supp. 304, 307 (N.D. Ga. 1984).

13

1    In *Allstate*, the court directly addressed *Tzung* and *Kroll*, rejecting the defendant's reliance

2 on these cases in support of its position that the faulty workmanship exclusion was not ambiguous.

3 The court explained its conclusion as follows:

> Although Allstate cites to cases where courts, including the Ninth Circuit, found the term "workmanship" itself to be unambiguous, *see e.g.*, *Tzung*, 873 F.2d at 1340-41 and *Kroll*, 594 F.Supp. at 307, it is important to remember that the policy's meaning "is to be derived from the circumstances of the particular case and not in the abstract." *Tzung*, 873 F.2d at 1340. *Tzung* and *Kroll* did not address the issue with which we are confronted, namely, whether one reasonable construction of "faulty workmanship" is a flawed product. Nevertheless, in both cases a flawed product was the basis of the finding of "faulty workmanship."

929 F.2d at 450.  Here, as in *Allstate*, the Court finds that the Faulty Workmanship Exclusion is ambiguous.  Moreover, in light of the similarities between the circumstances here and those in *Allstate*, the Court considers itself bound by *Allstate* on the question of whether the Faulty Workmanship Exclusion covers construction processes.

Accordingly, the Court concludes that Faulty Workmanship Exclusion, as a matter of law, does not justify a denial of coverage for the loss at issue in this case.

### E.  The Control of Property Provision

Century cites to the Control of Property Provision as an independent basis for coverage. Century asserts that all of the evidence shows that the Contractor, and not Century, controlled the sequencing of the construction.  Travelers, on the other hand, argues that the general Control of Property Provision does not restore coverage that is excluded in the more specific Hole in the Roof Provision and Faulty Construction Exclusion.  Because the Court concludes that neither exclusion applies, it need not reach this issue.

### F.  Bad Faith

Century asserts that because the law supporting coverage is so clearly established, the Court should hold, as a matter of law, that Travelers' denial of coverage was in bad faith.  Century concedes, however, that the question of bad faith is usually a fact question to be decided by the jury. While the Court agrees with Century that Travelers' reliance on the Hole in the Roof Provision and the Faulty Workmanship Exclusion to deny coverage is not supported by the relevant case law, it

14

does not find the legal issues to be so clear-cut that it is willing to take this issue out of the hands of the jury.

### IV.    CONCLUSION

Century's Summary Judgment Motion is GRANTED as to liability on the breach of contract claim and the declaratory judgment claim, and DENIED as to the bad faith claim. In particular, the Court holds, as a matter of law, that the Policy issued to Century by Travelers provides coverage for the damages alleged in the complaint and that coverage was wrongfully denied.  Travelers' Summary Judgment Motion is DENIED.

IT IS SO ORDERED.

Date: March 20, 2006

_____
JOSEPH C. SPERO
United States Magistrate Judge